UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| William Douglas Dawson, Jr., #248371, | ) C/A No. 4:13-1366-DCN-TER |
| Plaintiff, | ) |
| vs. | ) |
| | ) Report and Recommendation |
| Cpt. Rhonda Abston; Warden Michael McCall; Ass. Warden Florence Mauney; Ass. Warden Denis Bush; | ) |
| Defendants. | ) |

Plaintiff William Douglas Dawson Jr., ("Plaintiff"), proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983[1] on May 21, 2013. Plaintiff is a prisoner in the custody of the South Carolina Department of Corrections and currently housed at the Lee Correctional Institution. Plaintiff was housed at the Perry Correctional Institution (PCI) during the time of the allegations raised in this complaint. Defendants filed a motion for summary judgment on October 14, 2013. Because Plaintiff is proceeding *pro se*, he was advised on or about October 15, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendants' motion for summary judgment could result in dismissal of his complaint. The Plaintiff filed a response in opposition on December 2, 2013 (doc. # 80).

**STANDARD FOR SUMMARY JUDGMENT**

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972);

---

[1] Pursuant to the provisions of 28 U.S.C. §636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the District Court.

Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would

2

apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## DISCUSSION

Plaintiff alleges that on December 21, 2011, and again on May 27, 2012, he was illegally forced into a "control cell" under threat of mace. He alleges he was not allowed shoes, socks, a shower, or the opportunity to brush his teeth for three days each time. Plaintiff alleges that he was told he was being placed in the control cell in December for threatening an officer. He argues that even if this was the case, the control cell is not a sanction for threatening in SCDC. Plaintiff also alleges he was denied his blood pressure medication for those time periods because they were packed up and placed in his property bag with his other property at the time he was placed in the control cell. He asserts that in December he attempted to "rationalize with Captain Abston but she refused to acknowledge what I was emphasizing about the need for my blood pressure meds." (Complaint at 3). Plaintiff asserts that when he was placed in the control cell May 27, 2012 through May 30, 2012, by Captain Abston, he suffered numerous nose bleeds as a result of the deprivation

3

of his blood pressure medicine for three days. He contends that he reported Captain Abston's behavior to Major Bush who never did anything about it so he reported the incident to Assistant Warden Mauney. However, he asserts that Assistant Warden Mauney did not do anything about his complaints either. Plaintiff alleges that placing him in the control cell was cruel and unusual punishment for which he seeks monetary damages.

Defendants argue they are entitled to summary judgment.[2] They submitted the affidavit of Captain Rhonda Abston who attests that she is employed with the SCDC and functioned either as a duty warden or captain during the dates complained of by the Plaintiff, December 21 through 23, 2011, and May 27 through 30, 2012. (Affidavit of Abston, Doc. #59-2). The SCDC policies allow for use of a control cell for up to seventy-two hours if an inmate is a threat to others by his or her actions, is deliberately causing damage to his cell, is using items in the cell to cause damage to the cell or any part of the cell's facilities, and/or is using items in the cell to disrupt operations in any matter. (Id.). An inmate may be placed in a control cell by an officer acting as the Duty Warden or an officer with rank lower than Major, as long as they notify the Major and/or Duty Warden up the chain of command of the inmate's placement in the control cell and the reasons for the placement.

---

[2] Defendants argue that this action should be dismissed for failure to exhaust administrative remedies. Defendants attached an affidavit from Ann Hallman, Branch Chief of the Inmate Grievance Branch of the SCDC, who attests that the records attached to the memorandum are true and accurate copies of the records of Plaintiff without attesting as to whether or not the Plaintiff exhausted his administrative remedies or discussing the grievances filed. However, in reviewing the grievance forms attached, it appears Plaintiff filed a Step Two grievance on February 17, 2012, pertaining to being placed in the control cell on December 21, 2011. This grievance was responded to in May 2012. (Doc. #59-3). Plaintiff also attached several grievance forms to his response in opposition to the motion for summary judgment including the same Step Two grievance form pertaining to being placed in a control cell. (Doc# 80-1, p. 7). Based on the record, the court cannot conclude that Plaintiff failed to exhaust his administrative remedies such that his case should be dismissed.

(Id.). On each of the two times in question, Abston attests that she was either the duty warden or she placed the inmate in a control cell and notified her superiors up the chain of command of her actions. (Id.). Abston avers that at no time has she been reprimanded for placing the Plaintiff in a control cell. (Id.). In reviewing the records, Abston determined that she was the duty warden on December 21, 2011, and that she placed the Plaintiff in the control cell for threatening to inflict harm on or assaulting an employee and/or members of the public. (Id.). Abston cannot determine whether she was the duty warden on May 27, 2012. (Id). If she was, her actions were in accordance with policy. (Id.). If she was not the duty warden, she would have notified her superiors of the placement and upon review of her actions, they could have moved the Plaintiff if they believed she was in error. Control cells are not used for punishment. (Id.). Control cells isolate the inmate for no more than seventy-two hours, giving him a cool down period, in an attempt to control his behavior when he is a danger to himself or others or destruction of Department of Corrections property. (Id.). Use of control cells is necessary to keep order within the prison population. (Id.). Control cells are an accepted and effective tool to manage disruptive inmate behavior. (Id.).

Defendants set out SCDC Policy 22.12(29) addressing the use of control cells in their memorandum. It states that the Warden, Duty Warden, or major may place an inmate in a control cell for up to 72 hours when the inmate is a threat to others by his/her actions; is deliberately causing damage to the cell; is using items in the cell to cause damage to the cell or any part of the cell's facilities; and/or is using items in the cell to disrupt operations in any manner. (Defendants' memorandum).

Defendants submitted copies of grievances filed by Plaintiff. Plaintiff filed a grievance alleging he was not receiving his medication in August 2011. The Warden investigated the matter

5

and noted that the medication had been renewed, and reminded Plaintiff he could receive outside medical care at his own expense if he was dissatisfied. Plaintiff filed a grievance regarding his December 2011 control cell placement. (Grievance PCI 3183-11). The Warden denied his grievance and responded that Captain Abston was the Duty Warden and authorized to place an inmate in a control cell. The Warden also noted that Plaintiff was charged with an 809 offense, threatening to inflict harm on/or assaulting an employee and/or members of the public. (Grievance PCR 183-11). Plaintiff appealed his conviction for threatening harm which was upheld at the institutional and upper level (Grievance PCI 0072-12). (Defendants' memorandum).

To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) ( quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir.1991)). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. See Strickler, 989 F.2d at 1380–81. "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir.2003); see also White v. Gregory, 1 F.3d 267, 269 (4th Cir.1993) ("[A] prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") (citation omitted). Also, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Ohm v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed. 813 (1983).

"[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house

persons convicted of serious crimes, cannot be free of discomfort." Rhodes v. Chapman, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). "To the extent such conditions are restrictive and even harsh, they are part of the penalty that criminals pay for their offenses against society." Id. at 338.

Based on Plaintiff's medical records during the two periods at issue, Plaintiff has failed to present evidence of the type of serious injury required to state a cognizable claim of cruel and unusual punishment. Strickler, 989 F.2d at 1381 ("plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions"). Additionally, Plaintiff has failed to show that Defendant Abston acted with a "sufficiently culpable state of mind" to cause Plaintiff's pain when she allegedly refused to give him the medication out of his property bag. Shakka v. Smith, 71 F.3d 162, 166 (4th Cir.1995). The medical records show that he was either seen by medical during the three days he was held in the control cell in December 2011 and May 2012 and/or that he refused medication. (Doc. #59-5 and #59-6).

Any allegations by Plaintiff that Defendants did not abide by SCDC policies in using the control cell fails. Generally, Plaintiff's allegations that Defendants did not follow SCDC's policies or procedures, standing alone, would not amount to a constitutional violation. Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994) (The "Constitution creates no entitlement to ... any such procedure voluntarily established by a state.").

**Medical Indifference**

Plaintiff argues that when he was placed in the control cell on both occasions, his medication was packed up and stored and he was not given his blood pressure medicine while in the control cell.

7

He asserts that he suffered nose bleeds, headaches, and swelling. (Doc. # 80 at 5). Plaintiff contends that he was placed at great risk for stroke and/or heart attack by the denial of this blood pressure medicine on the two occasions. Id.

Defendants assert that the medical records show that Plaintiff was offered his medication in every area of the institution, but they cannot medicate him against his will. Defendants argue that Plaintiff refused to take his medication or to obey rules for administration of medication and then blames the SCDC for not providing his medication. Defendants contend that Plaintiff's loss of medications, if any, resulted solely from his behavior of refusing the medication and not his location in the institution. Defendants argue that records show no damage to the Plaintiff from the placement in the control cell. (Defendants' memorandum, p. 2-3). Defendants assert that Plaintiff has a history of being non-compliant with his medication. (Id.). Defendants submitted the affidavit of Nadine Pridgen who attests that she is the Director of Health Information Resources for the Central Office of the SCDC. She attests that the medical records attached to the Defendants' Motion for Summary Judgment are true and accurate copies of the medical records of the Plaintiff. (Doc. # 59-8). For example, Defendants noted that Plaintiff refused his blood pressure medicine on September 17, 2004, December 1, 2004, December 18, 2004, March 22, 2005, November 22, 2005, and November 23, 2005. (Id.). Plaintiff engaged in hoarding his medications which was documented on February 11, 2011, and February 14, 2011. By February 15, 2011, he resumed taking his medication. (Id.). On February 21, 2012, it is documented that Plaintiff told his mental health care worker that he was not receiving his medications and did not know why. (Id). Upon investigation, the case worker was informed by medical that Plaintiff received his medication unless he refused. (Id.). Defendants contend that there are no medical records that evidence the symptoms Plaintiff alleges in his

complaint. (Id.). However, the medication administration record for December 2011 and May 2012 shows that Plaintiff frequently refused his medications which is noted by a circled "R" in the chart of medication administration dated December 2011 and May 2012. (Id.).

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. Id. The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. Id. at 104.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

9

Id. at 837–38.

Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir.1986). Deliberate indifference to a serious medical need requires proof that each Defendant knew of and disregarded the risk posed by the Plaintiff's objectively serious medical needs. Farmer, 511 U.S. at 837. In cases involving the denial of or the delay in providing medical treatment to a prisoner, the prison official must know of and disregard an objectively serious condition, medical need, or risk of harm. Sosebee v. Murphy, 797 F.2d at 182–83 (4th Cir.1986). The Fourth Circuit defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreye, 535 F.3d 225, 241 (4th Cir.2008). A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987).

Upon review of the record, including Plaintiff's medical records, the court does not find that Plaintiff has presented evidence sufficient to create a genuine issue of material fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Plaintiff has alleged that he suffered with nose bleeds, headaches, and swelling during this time period but has not alleged or shown any other serious adverse effect from not receiving his medications for approximately three days in December 2011 and three days in May 2012. Further, the medical records and SCDC Medication Administration Records reveal that Plaintiff was either seen by medical personnel and/or refused his medications during the time periods alleged. (Docs. #59-5 and

#59-6). Even if Plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Plaintiff has failed to show that he had a serious medical need of which Defendants knew about and consciously ignored. Plaintiff has not offered evidence that would support a finding that Defendants knew about and intentionally or with reckless disregard ignored a risk posed by Plaintiff's condition. Additionally, there is no indication that the named Defendants, rather than medical personnel, were responsible for dispensing any of the medications in question while he was in the control cell. Therefore, any claims of medical indifference should be dismissed.

Moreover, as to any allegations of medical indifference as to Defendants who are non-medical personnel, the claims fail. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Id. Under these principles, the Plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against non-medical personnel.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the Plaintiff.[3] For the above stated reasons, summary judgment should be

---

[3] If Plaintiff is attempting to hold any of the Defendants liable for the actions of their employees, the claim fails. Under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982).

granted in favor of Defendants on this issue.[4]

## Qualified Immunity

Defendants deny that any of the alleged conduct or conditions complained of by Plaintiff gives rise to a constitutional violation. However, Defendants assert that, even if this Court concludes that the facts are sufficient to establish a Constitutional claim, they are entitled to qualified immunity.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate

---

[4] As to any allegation Plaintiff raises with respect to his grievances not being handled properly, it is recommended that these allegations be dismissed as there is no constitutional right to participate in grievance proceedings. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

> clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. However, even if there was a violation, Defendants are entitled to qualified immunity. Thus, the undersigned recommends that summary judgment be granted as to these Defendants.

### Eleventh Amendment Immunity

The Defendants contend that the Plaintiff's §1983 claims against them for money damages in their official capacity are barred pursuant to Eleventh Amendment Immunity. Defendants also argue that the action against them should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as an employee of the SCDC they are not a "person" under 42 U.S.C. §1983 and, therefore, not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that Defendants were/are employees of the SCDC at the time of the allegations in the complaint. Thus, they are entitled to Eleventh Amendment immunity from monetary damages in their official capacity.

### Pendent Jurisdiction

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want

14

of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## **CONCLUSION**

The Plaintiff has failed to show that Defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983.  It is therefore, for the reasons stated herein,

RECOMMENDED  that the m otion  filed  by D efendants  (document  #59) for sum mary judgment be GRANTED IN ITS ENTIRETY and the case dismissed.

IT IS FURTHER RECOMMENDED that all outstanding motions be deemed MOOT.

Respectfully submitted,

  s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

May 13, 2014
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**